UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIA K.,

                        Plaintiff,

        v.

FRANK BISIGNANO,[1] Commissioner of
  Social Security,

                       Defendant.

_____

**DECISION
and
ORDER**

**22-CV-6584LGF**
(**consent**)

APPEARANCES:        HILLER COMERFORD INJURY & DISABILITY LAW
                               Attorneys for Plaintiff
                               IDA M. COMERFORD and
                               REBECCA M. KUJAWA, of Counsel
                               6000 North Bailey Avenue
                               Suite 1A
                               Amherst, New York  14226

                               MICHAEL DiGIACOMO
                               UNITED STATES ATTORNEY
                               Attorney for Defendant
                               Federal Centre
                               138 Delaware Avenue
                               Buffalo, New York  14202
                                   and
                               JONATHAN MICHAEL KING
                               Special Assistant United States Attorney, of Counsel
                               Social Security Administration
                               Office of General Counsel
                               6401 Security Boulevard
                               Baltimore, Maryland  21235

## **JURISDICTION**

On May 19, 2025, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned in accordance with this court's June 29, 2018

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

Standing Order (Dkt. 11). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 24, 2023 (Dkt. 6), and by Defendant on March 13, 2023 (Dkt. 8).

## **BACKGROUND**

Plaintiff Tia K. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on February 17, 2021, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges she became disabled on February 9, 2020, based on a pulmonary aneurysm, anxiety, depression, post-traumatic stress disorder ("PTSD"), suicidal ideation, inability to be in large crowds, a need to sit in the dark, and thoughts that her father and family are "doing witchcraft on her" and "are going to kill her." AR[2] at 15, 234, 249. Plaintiff's application initially was denied on June 4, 2021, AR at 122-33, and the initial denial was upheld upon reconsideration on June 18, 2021. AR at 134-45. At Plaintiff's timely request, AR at 150-64, on November 30, 2021, an administrative hearing ("administrative hearing") was held via telephone before Administrative Law Judge ("ALJ") Kevin Kenneally ("the ALJ"), located in South Jersey, New Jersey. AR at 31-53. Appearing and testifying by telephone at the administrative hearing were Plaintiff, represented by Jeffrey Valentine, Esq., and vocational expert Jay Steinbrenner ("the VE").

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on February 23, 2023 (Dkt. 5).

On January 10, 2022, the ALJ issued a decision denying Plaintiff's claim, AR at 12-30 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 162-64.  On November 1, 2022, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-6, thereby rendering the ALJ's Decision the Commissioner's final decision.  On December 29, 2022, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On March 24, 2023, Plaintiff moved for judgment on the pleadings (Dkt. 6 ("Plaintiff's Motion"), attaching the Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 6-1) ("Plaintiff's Memorandum").  On April 13, 2023, Defendant moved for judgment on the pleadings (Dkt. 8) ("Defendant's Motion"), attaching Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Memorandum Pursuant to Local Rule 5.5 (Dkt. 8-1) ("Defendant's Memorandum").  Filed on April 26, 2023, was Plaintiff's Notice of No Reply (Dkt. 9) in which Plaintiff advised she elected not to file a reply but, instead, relies on the arguments made in Plaintiff's Memorandum.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.

## FACTS[3]

Plaintiff Tia K. ("Plaintiff"), born April 2, 1992, was 27 years old as of her alleged disability onset date ("DOD") of February 9, 2020, and 29 years old as of January 13,

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

2022, the date of the ALJ's Decision.  AR at 15, 234, 249, 256.  Plaintiff has had a tumultuous homelife since birth and into her 20s, after which Plaintiff was essentially homeless for several years and often stayed with a friend, "Norma."  AR at 1165, 1167. According to Plaintiff, her mother, who gave birth to Plaintiff at age 12,[4] is addicted to drugs and prostituted Plaintiff from ages 11 to 18 in exchange for drugs to support her drug habit.  AR at 1227.  Plaintiff also spent time in foster homes.  AR at 86, 335, 652. Plaintiff began using drugs, including cocaine, marijuana, and alcohol at a young age and would get drunk and high with her mother.  *Id*.

On April 9, 2018, then homeless and sometimes living with Norma, following an arrest for possession of cocaine, Plaintiff was mandated to enter a substance abuse treatment program, and entered Catholic Family Center ("CFC"), where she was diagnosed with severe use disorders for cocaine, alcohol, and cannabis, and moderate tobacco use disorder.  AR at 656-69.  After a suicide attempt, Plaintiff lived, from June 17, 2019 to September 30, 2019, in Barrington House ("Barrington"), an addiction treatment residence located in Rochester, New York.  AR at 743, 755.

As of March 13, 2021, Plaintiff lived alone in an apartment, AR at 280, but on March 30, 2021, reported to her therapist that she just adopted a puppy.  AR at 863. Plaintiff has an 8th grade education, has not obtained a GED, and has not completed any specialized training, trade, or vocational school.  AR at 249.  Plaintiff does not have a driver's license and has no work experience.  AR at 250, 283.

It is undisputed that in addition to mental health impairments, including bipolar disorder, major depressive disorder, polysubstance use disorder, on June 4, 2020,

---

[4] A copy of Plaintiff's birth certificate indicates her mother gave birth at age 14.  AR at 1042.

Plaintiff suffered a "small" pulmonary embolism ("PE").  AR at 220-61.  Plaintiff was treated for the PE at Strong Memorial Hospital ("Strong") in Rochester, New York and discharged that same day with a prescription for apixaban, a blood thinner to treat blood clots.  AR at 333, 1076-1346.

Throughout the period relevant to Plaintiff's disability application, Plaintiff continued with counseling through CFC's Restart program ("Restart") where she regularly saw Licensed Master Social Worker ("LMSW") Monique Williams ("LMSW Williams"), and Licensed Clinical Social Worker ("LCSW") Joseph DelVecchio ("LCSW DelVecchio").  AR at 644-1036.  On March 4, 2020, Plaintiff established primary care through University of Rochester Medical Center ("URMC"), at Highland Family Medicine ("HFM"), an affiliate of URMC, where her primary care physician ("PCP") is Deborah Pierce, M.D. ("Dr. Pierce").  AR at 312-485, 492-543, 549-643, 1347-1391.

In connection with her disability benefits claim, on May 20, 2021, Plaintiff underwent an internal medicine examination by consultative physician Susan Dantoni, M.D. ("Dr. Dantoni").  AR at 487-90.  Dr. Dantoni's physical examination was largely unremarkable and Dr. Dantoni diagnosed Plaintiff with a history of PE which causes Plaintiff to very easily become short of breath, mental health issues including depression and anxiety, gastroesophageal reflux disease ("GERD"), muscle spasms, and high blood pressure.  AR at 490.  Plaintiff's prognosis was fair.  *Id*.  Dr. Dantoni's medical source statement included that upon examination, Dr. Dantoni was unable to identify any physical limitations, but based on Plaintiff's history of PE and self-reported claims that Plaintiff cannot exert herself and has difficulty ascending stairs and walking significant distances, Dr. Dantoni opined Plaintiff should avoid environments with

pulmonary irritants so as not to exacerbate her breathing problems and should also have a mental health evaluation.  *Id*.

Also on May 20, 2020, Plaintiff underwent a psychiatric evaluation by consultative psychologist Adam Brownfield, Psy.D. ("Dr. Brownfield").  AR at 545-48. Based on Plaintiff's psychiatric history and a mental status examination, Dr. Brownfield provided a medical source statement that there was no evidence that Plaintiff has any limitation in understanding, remembering, or applying simple directions and instructions, maintaining personal hygiene and appropriate attire, being aware of normal hazards and taking appropriate precautions, and interacting adequately with supervisors, coworkers, and the public, but is mildly limited in using reasoning and judgment to make work-related decisions, sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work, and moderately limited in applying complex direction and instructions.  *Id*. at 547.  Dr. Brownfield opined the results of the evaluation are consistent with psychiatric and substance abuse problems, but are not, alone, sufficiently significant to interfere with Plaintiff's ability to function on a daily basis.  *Id*.  Dr. Brownfield diagnosed major depressive disorder with anxious distress, alcohol use disorder in early remission, and cannabis use disorder in early remission, recommended continuing with psychological and substance abuse treatment, estimated Plaintiff's impairment would continue for six months with treatment, but her prognosis was good although Plaintiff would not be able to manage her own funds until she completed treatment.  *Id*. at 548.

On June 1, 2021, State agency medical consultant S. Putcha, M.D. ("Dr. Putcha"), reviewed Plaintiff's medical records and concluded Plaintiff's physical

impairments, including a history of PE and cocaine abuse, were not severe.  AR at 72-78, 88 ("Dr. Putcha's opinion").  Dr. Putcha also stated the is no evidence in the record of any substance abuse disorder or drug addiction and alcoholism issue.  AR at 88.  Upon Plaintiff's request for reconsideration, on June 18, 2021, Dr. Putcha's opinion was affirmed by State agency medical consultant R. Abueg, M.D. ("Dr. Abueg").  AR at 96-106 ("Dr. Abueg's opinion").

On June 1, 2021, State agency psychiatric consultant psychologist T. Inman, Ph.D. ("Dr. Inman"), reviewed Plaintiff's medical record and concluded Plaintiff has non-severe impairments of chronic respiratory disorder, and severe depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and substance abuse disorders (drugs).  AR at 79-86 ("Dr. Inman's opinion").  In connection with Plaintiff's request for reconsideration, on June 18, 2021, Dr. Inman's opinion was confirmed by State agency psychiatric consultant psychologist L. Blackwell, Ph.D. ("Dr. Blackwell").  AR at 86-88 ("Dr. Blackwell's opinion").

On November 11, 2021, LMSW Williams completed a Treating Medical Source Statement (Medical).  AR at 1031-1036 ("LMSW Williams's opinion").  LMSW Williams listed Plaintiff's diagnoses as bipolar disorder, current episode mixed, severe, without psychotic features, based on a co-occurring disorder (disorder involving both a mental health disorder and substance abuse disorder), severe depression, and mild anxiety.  AR at 1031.  Plaintiff's mental health treatment included individual psychotherapy biweekly resulting in a decrease in symptoms.  *Id*.  LMSW Williams checked boxes indicating Plaintiff exhibits 14 out of 56 separately listed signs and symptoms of mental impairments.  *Id*. at 1032.  LMSW Williams indicated that Plaintiff is precluded from

performing 13 of 19 separately listed mental abilities and aptitudes needed to do unskilled work for 10% to 20% of an 8-hour workday, and for more than 20% of an 8-hour workday for the remaining six listed mental abilities and aptitudes, *id*. at 1033-34, and that Plaintiff would be off-task for 20% of the work-day.  *Id*. at 1034.  According to LMSW Williams, Plaintiff's impairments and treatment would cause her to miss more than four days of work per month, the impairments were expected to last more than 12 months, and Plaintiff is not a malingerer.  *Id*. at 1035.  LMSW Williams reported Plaintiff's impairments include substance abuse which contributes to Plaintiff's limitations, and that even with improvement in her condition, Plaintiff would remain unable to perform full-time work.  *Id*.

LMSW Williams assessed Plaintiff with a moderate limitation in the area of understanding, remembering, and applying information, and markedly limited in the areas of interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing herself.  AR at 1036.  Plaintiff's mental disorder was further assessed as "serious and persistent" based on the disorder's existence for more than two years, and evidence of both ongoing treatment or a highly structured setting, and marginal adjustment, *i.e.*, a minimal capacity to adapt to changes in Plaintiff's environment or to demands that are not part of Plaintiff's daily life.  *Id*.  According to LMSW Williams, Plaintiff receives medication for both her mental illness and substance abuse, but is often non-compliant with medication, thereby increasing Plaintiff's chances of relapse and affecting her mental health.  *Id*.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2.    Disability Determination**

Although Plaintiff seeks only SSI benefits, the definition of "disabled" is the same for purposes of receiving under Title XVI, as for receiving Social Security Disability Income benefits under Title II.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months,

there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity ("SGA") since February 17, 2021, the application date, AR at 17, and suffers from the severe impairments of bipolar disorder, major depressive disorder, alcohol and cannabis use disorder, status post pulmonary embolism, GERD, hypertension, and obesity, *id.*, but Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15-19. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a sedentary work as defined by 20 C.R.F. § 416.967(a),[6] with certain limitations including that Plaintiff

> (1) can occasionally push, pull, operate controls with the bilateral upper and lower extremities, (2) can occasionally climb ramps and stairs, (3) can never climb ropes, ladders, scaffolds, (4) can occasionally balance, stoop, kneel, crouch, crawl, (5) can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, (6) only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, (7) is limited to performing simple routine tasks and making simple work related decisions, (8) can frequently interact with the general public, co-workers, supervisors.

AR at 19-24.

The ALJ continued that Plaintiff has no PRW, *id.* at 24, but based on Plaintiff's age of 28 as of the application date, limited education, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a table worker and bonder

---

[6] Relevantly,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

semiconductor.  *Id*. at 24-25.  Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Act, since the application date of February 17, 2021.  *Id*. at 25.

## 3.    Analysis of Plaintiff's Arguments

In support of her motion, Plaintiff argues the ALJ's Decision is not supported by substantial evidence in the record because the ALJ crafted the physical RFC based on his own lay interpretation of the evidence, Plaintiff's Memorandum at 10-15, and the mental RFC is not supported by substantial evidence because the ALJ improperly assessed the opinion of LMSW Williams and rejected LMSW Williams's opinion for inappropriate reasons, *id*. at 15-23.  In opposition to Plaintiff's motion and in support of Defendant's motion, Defendant argues substantial evidence in the record supports the ALJ's physical RFC finding, Defendant's Memorandum at 5-14, and mental RFC finding. *Id*. at 14-24.

### A.  Physical RFC

Plaintiff's physical RFC concerns Plaintiff's history of a pulmonary embolism which Plaintiff maintains renders her short of breath, causes pain in her back, renders Plaintiff unable to stand or walk for long, and Plaintiff becomes quickly fatigued.  AR at 35-38, 276-78.  Plaintiff argues that the ALJ's determination that all three opinions pertaining to Plaintiff's physical health, including the opinions of Drs. Dantoni, Putcha, and Abueg, were unpersuasive establishes the ALJ did not "tether" the physical RFC to any specific evidence but, rather, improperly relied on his own lay opinion in formulating Plaintiff's physical RFC.  AR at 10-14.  In opposition, Defendant argues substantial evidence in the record supports the ALJ's formulation of Plaintiff's physical RFC, Defendant's Memorandum at 5-12, which was not required to be tethered to any

specific opinion or to based on a detailed function-by-function assessment of Plaintiff's limitations but, rather, the ALJ was permitted to resolve genuine conflicts in evidence. *Id*. at 12-14.  There is no merit to Plaintiff's arguments regarding her physical RFC.

Initially, the ALJ is not required to "tether" an RFC determination to any opinion in the record.  It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  Despite decisions rendered in this district, several of which are referenced by Plaintiff, Plaintiff's Memorandum at 14-15, granting the Plaintiff's request for remand based on the ALJ's failure to "tether" the RFC determination to a particular medical opinion, the undersigned finds such requirement is irreconcilable with the Second Circuit's repeated instruction that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013)).  Rather, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'"  *Id.* (quoting *Matta*, 508 Fed.Appx. at 56 (brackets in *Schillo*). *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 9 (2d Cir. 2017)) (the ALJ could rely on voluminous treatment notes that provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the claimant's RFC). The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains

sufficient evidence from which the claimant's RFC can be determined. *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).  Rather, where the ALJ's RFC determination does not directly correspond to any medical opinion in the record, the RFC determination will be upheld so long as it is supported by the Plaintiff's daily activities, treatment history, and consultative examiner's evaluations. *See Wilson v. Colvin*, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'"); *Kirkland v. Colvin*, 2016 WL 850909, at * 12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and consultative examiner's evaluation supported those limitations).

Here, the ALJ considered and found unpersuasive the opinions of consulting physicians Drs. Dantoni, Putcha, and Abueg all of whom found Plaintiff's history of PE left Plaintiff with decreased pulmonary function causing Plaintiff to easily become short of breath, AR at 490 (Dr. Dantoni), making it difficult to exert herself by walking up stairs or distances and requiring Plaintiff to avoid pulmonary irritants.  AR at 76 (Dr. Putcha), and 94 (Dr. Abueg).  A plain review of the record establishes that in limiting Plaintiff to sedentary work with additional restrictions to occasionally operating controls with the

bilateral upper and lower extremities, climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, never climbing ropes, ladders, scaffolds, avoiding unprotected heights, moving mechanical parts, and operating a motor vehicle, and only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, the ALJ formulated a physical RFC that is more restrictive than is supported by any of the three physical opinions.

Significantly, it is the Plaintiff who bears the burden of establishing her RFC is more restrictive than the ALJ's determination. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C. § 423(d)(5)); *Michael P. V. Commissioner of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations greater than those found by the ALJ). Here, because the ALJ formulated a physical RFC that included additional restrictions resulting in limiting Plaintiff to working fewer jobs than supported by a medical opinion, such determination, if incorrect, is merely harmless error. *See Ellen A. v. Saul*, 2021 WL 1087949, at * 4 (W.D.N.Y. Mar. 22, 2021) (ALJ's determination that Plaintiff's RFC was more restrictive than what was supported by the medical evidence in the record was favorable to the plaintiff and thus was harmless error).

Relevantly, the physical RFC formulated by the ALJ is supported by the treatment records in the record, as well as by Plaintiff's self-reported activities of daily living. For example, despite Plaintiff's recent complaints of back pain Plaintiff attributes

to her PE, Dr. Dantoni's physical examination of Plaintiff was completely unremarkable including with regard to gait and station, musculoskeletal, neurologic, extremities, and fine motor activity of hands, AR at 487-88, and an X-ray of Plaintiff's back on May 20, 2021, showed no fracture or subluxation, such that Dr. Dantoni was unable to identify any physical limitations.  AR at 489.  Further, treatment records of Dr. Pierce repeatedly show Plaintiff denied any symptoms attributable to her PE.  *See* AR at 1367 (Plaintiff reporting on June 10, 2020, she was "feeling well," with no dyspnea (shortness of breath), bleeding, bruising, or cough), AR at 1370 (Plaintiff reporting same on July 10, 2020), AR at 1375 (review of Plaintiff's systems on December 17, 2020, revealed no shortness of breath of chest pain).  On May 5, 2021, Plaintif's lungs were clear to auscultation (listening to internal sounds with stethoscope) bilaterally without wheezes or crackles.  AR at 1383.

With respect to Plaintiff's activities of daily living, the ALJ considered that on March 30, 2021, Plaintiff reported she was caring for a newly adopted puppy, AR at 863, and on June 30, 2021, Plaintiff reported she worked in a garden at her church and went for long walks.  AR at 799.  On May 20, 2021, Plaintiff reported she cooks, cleans, does laundry, and shops as needed.  AR at 488. The ALJ was permitted to rely on such activities in formulating Plaintiff's physical RFC.  *See Lora v. Colvin*, 2017 WL 4339479, at * 5 (S.D.N.Y. Sept. 12, 2017) (upholding ALJ's finding plaintiff was not disabled where plaintiff's testimony of regularly attending school, daily performing routine self-care activities, and socializing with friends was inconsistent with a finding of disability).

In sum, even if the ALJ's formulated an RFC that was more restrictive than the record supports, such error was harmless and does not support remand as a less

restrictive RFC determination would still lead to a conclusion that Plaintiff is not disabled based on her physical RFC.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." (quoting *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987))).  The ALJ's Decision is thus supported by substantial evidence in the record with regard to Plaintiff's physical RFC determination.

### B.  Mental RFC

Nevertheless, the ALJ's mental portion of the RFC determination is not supported by substantial evidence in the record.  As stated, after determining Plaintiff suffers from several mental health impairments, including bipolar disorder, major depressive disorder, and alcohol and cannabis use disorder,[7] AR at 17, the ALJ attempted to accommodate Plaintiff's mental health impairments by limiting Plaintiff to performing simple routine tasks and making simple work related decisions, and frequently, as opposed to unlimited, interactions with the general public, co-workers, and supervisors. AR at 19.

Initially, with regard to Plaintiff's mental impairments, although Plaintiff challenges the ALJ's formulation of Plaintiff's RFC with regard to her mental impairments at step four of the five-step analysis, a plain review of the record reveals the ALJ also failed to

---

[7] Despite finding Plaintiff has the severe impairments of alcohol and cannabis use disorders, AR at 17, the ALJ did not evaluate these impairments pursuant to Social Security Ruling or "SSR" 13-2p, 2013 WL 621536 (S.S.A. Feb 20, 2013), pertaining to evaluating Social Security cases involving drug addiction and alcoholism ("DAA").  Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

adequately consider whether Plaintiff meets the criteria for disability based on a mental impairment appearing in the "Listings of Impairments,", *i.e.*, 20 C.F.R. Part 404, Subpart P, Appendix 1.  Rather, the ALJ's consideration of the so-called "paragraph B criteria" and "paragraph C criteria" for disability based on mental impairments for Listing 12.04 (depressive, bipolar and related disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04, was, at best, perfunctory.

The paragraph B criteria pertain to four areas or "domains" of adaptive functioning including (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Subpt. P, App. 1 §§ 12.00E, 12.00F ("§ 12.00 __"). To satisfy the paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one, or a "marked" limitation of two, of the four areas of mental functioning.  *See* 20 C.F.R. Subpt. P, App. 1, § 12.00E.  Here, the ALJ failed to adequately explain why Plaintiff does not meet the criteria under paragraph B for disability under Listing 12.04.

With regard to understanding, remembering, or applying information, the ALJ, relying on Dr. Brownfield's consultative examination that assessed Plaintiff with intact memory and the low average range of estimated intellectual functioning, AR at 18 (referencing AR at 547), found Plaintiff has a moderate limitation, which is consistent with Plaintiff attending school only through 8th grade and never obtaining a GED, AR at 249 (ALJ's Decision at 4), and LMSW Williams's opinion.  AR at 1036.  Nevertheless, the ALJ found Plaintiff was only moderately limited in interacting with others, because although Plaintiff reported social withdrawal, *see* AR at 18 (ALJ's Decision at 4

(referencing AR at 545)), struggling with anger, *id*. (referencing AR at 872), and an

irritable mood, *id*. (referencing AR at 947), at the consultative psychiatric evaluation on

May 20, 2021, Dr. Brownfield found Plaintiff was cooperative and her presentation was

adequate.  *Id*. (referencing AR at 546).  Significantly, however, in contrast, Plaintiff's

therapist, LMSW Williams, assessed Plaintiff with a marked impairment in this area.  AR

at 1036.  In particular, the record is replete with references to Plaintiff's difficulties in

dealing with others, including her family, *see*, *e.g.*, AR at 998 (Plaintiff describing her

lack of family support including a strained relationship with her mother, her grandmother

who used crack cocaine, and her siblings who often left their children with Plaintiff for

days while the siblings used drugs), lack of friends and social withdrawal, *id*. at 1217

(recent overdose death of friend contributed to Plaintiff's social withdrawal), and 1246

(reporting sister with whom Plaintiff had not spoken in one year called Plaintiff; sister

was inebriated and proceeded to say emotionally abusive things to Plaintiff; Plaintiff

reported all contact with siblings were risk factors to Plaintiff abusing drugs and alcohol;

Plaintiff's mental health symptoms alienated Plaintiff from her chemical dependency

group whose members did not understand what Plaintiff has been experiencing).  The

ALJ's assessment that Plaintiff has a moderate limitation in this area, AR at 18, is

inconsistent with the ALJ's finding that Plaintiff is capable of "frequently"[8] interacting

with the general public, co-workers, and supervisors.  *Id*. at 19.  *See Holly J. v. Comm'r*

*of Soc. Sec.*, 2025 WL 2647568, at *4 (W.D.N.Y. Sept. 16, 2025) (finding the ALJ

---

[8] The court notes that as relevant here, "'occasionally' means occurring from very little up to one-third of the time . . . . , whereas 'frequent' means occurring from one-third to two-thirds of the time."  *Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *5–6 (S.S.A. 1983)

"oversimplified the record" where the ALJ's "conclusory rationales" failed to explain the level of impairments).

Similarly, in the area of maintaining concentration, persistence, and pace, the ALJ assessed Plaintiff with a moderate limitation based on Dr. Brownfield's mental status examination where Plaintiff reported having concentration difficulties, AR at 18 (ALJ's Decision at 4 referencing AR at 546)), and Plaintiff was unable to perform serial threes and serial sevens, but able to count and do simple calculations. *Id.* (referencing AR at 547). In contrast, LMSW Williams, Plaintiff's treating counselor, assessed Plaintiff with a marked limitation in this area, AR at 1035, reporting Plaintiff's mental health impairments would interfere with Plaintiff's ability to perform several work-related aptitudes for more than 20% of an 8-hour workday including maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, and completing a normal workday and workweek without interruptions from psychologically based symptoms. AR at 1033. LMSW Williams also estimated Plaintiff would likely miss more than four days of work per month because of her mental health issues and drug addiction relapse. *Id.* at 1035. Significantly, the ALJ did not explain how Plaintiff's ability to count and perform simple calculations is more predictive than LMSW Williams's findings of Plaintiff's functional ability to maintain concentration, persistence, and pace. *See Holly J.*, 2025 WL 2647568, at * 4 (ALJ's determination that the plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace was not supported by the ALJ's reliance on mental status exams showing the plaintiff was labile, and tangential with lack of insight and frequent emotional outbursts).

As for the functioning area of adapting or managing oneself, the ALJ, relying on Dr. Brownfield's opinion, found Plaintiff with a moderate limitation based on Plaintiff's ability to dress, bathe, and groom herself, cook and prepare food, clean, do laundry, shop, manage money, and take public transportation.  AR at 18 (ALJ's Decision at 4 (citing AR at 547)).

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.4.

In the instant case, Plaintiff's ability to groom herself, tend to her basic needs, and perform such chores as laundry and shopping, do not establish that Plaintiff can also distinguish between acceptable and unacceptable work performance, set realistic goals, and make plans independently of others.  In fact, there is evidence to the contrary in the administrative record.  *See*, *e.g.*, AR at 858-60 (March 31, 2021 note from Plaintiff's substance abuse therapy group reporting Plaintiff was cursing and interrupting others instead of waiting her turn to speak, and did not understand why she was not permitted to voice her opinion out of turn); AR at 1202-93 (Restart treatment note reporting Plaintiff has difficulty managing appointments and avoiding scheduling conflicts, lacks organization and assumes "someone else is taking care of her schedule".  Although the ALJ is not required to address every piece of evidence in the record, here, the ALJ points to no evidence regarding Plaintiff's ability to adapt and manage herself other than her ability to groom and tend to basic needs and chores.

Accordingly, the matter should be REMANDED to the Commissioner for a more thorough analysis of the paragraph B criteria.  The ALJ also failed to adequately explain why Plaintiff does not meet the criteria under paragraph C for disability under Listing 12.04.

A claimant will satisfy the paragraph C criteria if,

Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and

2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App.1, §§ 12.04.

Here, the ALJ's Decision merely states, without any explication, that "the evidence fails to establish the presence of the 'paragraph C' criteria," AR at 18, despite evidence in the record documenting that Plaintiff has suffered from her mental impairments for more than the requisite two years.  *See*, *e.g.*, AR at 1088-1161 (medical records documenting Plaintiff's psychiatric hospitalization on May 31, 2017 following Plaintiff's attempt to commit suicide by overdosing and jumping off a bridge; Plaintiff was diagnosed with depression and suicidal ideation, and psychiatric evaluation was ordered and Plaintiff was referred for inpatient chemical dependency treatment); AR at 1163 (Plaintiff was taken to emergency department at URMC for mental health evaluation after making suicidal statements while in jail on drug charge; Plaintiff was reportedly banging her

head in the police vehicle while in transit to the emergency department; Plaintiff's

psychiatric history included polysubstance abuse, depression, and anxiety).

There also is evidence in the administrative record that Plaintiff has received

"[m]edical treatment, mental health therapy, psychosocial support(s), or a highly

structured setting(s) that is ongoing and that diminishes the symptoms and signs of your

mental disorder."  20 C.F.R. Pt. 404, Subpt. P, App.1, §§ 12.04.C.1.  Significantly,

Plaintiff has been in treatment for her mental impairments consistently since her May

31, 2017 hospitalization for her suicide attempt, and when Plaintiff is compliant with her

treatment programs, she generally is reported to be doing better.  *See*, *e.g.*, AR at 755

(discharge summary stating that upon discharge from Barrington on September 30,

2019, Plaintiff had met the treatment goals for the program).  Accordingly, the ALJ

should also consider whether Plaintiff meets this requirement.

With respect to "marginal adjustment," the regulations explain that

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G.2.c.

Here, the ALJ failed to address the fact that from June 17, 2019 until September 30,

2019, Plaintiff lived in Barrington House, which is supportive housing through which

Plaintiff was able to obtain therapy for her mental health and substance abuse

disorders.  AR at 755, 743.  Although Plaintiff was discharged on September 30, 2019

to her own apartment, prior to such discharge, Plaintiff's counselors reported Plaintiff

continued to need residential support and recommended Plaintiff obtain further

supportive housing and was referred to other such housing including "East House" and

"DePaul" for residence in a supportive apartment program with the goal of Plaintiff

learning to live on her own.  AR at 748, 1293 1302.  Plaintiff, however, did not obtain

such supportive housing[9] and there is evidence in the record that after Plaintiff moved

out of supportive housing at Barrington, Plaintiff struggled to pay rent and bills, and on

January 14, 2020, Plaintiff reported she was again experiencing suicidal ideation which

was unpredictable and random.  AR at 996-98.  *See also*, AR at 772 (Plaintiff again

using cannabis on September 27, 2021); AR at 1379 (Plaintiff reporting on February 8,

2021, she was "trying to stop weed").  Plaintiff's difficulties upon being discharged from

Barrington House into an apartment that was not supportive housing are evidence that

Plaintiff struggles with "marginal adjustment."  The matter thus should also be

REMANDED to the ALJ for an analysis of the paragraph C criteria.

Of particular relevance to this case is that despite Plaintiff's well-documented

substance abuse of long duration and finding Plaintiff has the severe impairments of

alcohol and cannabis use disorders, both State agency review physicians Drs. Putcha

and Abueg determined "[t]here is no evidence of any substance abuse disorder/DAA

issue."  AR at 88, 106.  Because the ALJ did not find Plaintiff disabled, the ALJ did not

---

[9] It is not clear from the record why Plaintiff did not obtain a domicile in another supportive housing
residence.

evaluate the materiality of Plaintiff's drug and alcohol abuse on Plaintiff's functional limitations pursuant to Social Security Ruling or "SSR"[10] 13-2p, 2013 WL 621536 (S.S.A. Feb 20, 2013), pertaining to evaluating Social Security cases involving drug addiction and alcoholism ("DAA").  "In general, if a plaintiff has drug addiction and alcoholism ("DAA") and if plaintiff is disabled considering all of his or her impairments, including the DAA, then the ALJ is required to perform addition[al] analysis."  *Patrick F. G. v. Comm'r of Soc. Sec*., No. 1:20-CV-0537, 2021 WL 3421446, at *8 (W.D.N.Y. Aug. 5, 2021) (citing SSR 13-2p).  The critical question is "whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1)).

Accordingly, the matter should be REMANDED to the Commissioner for further proceedings regarding Plaintiff's mental RFC, particularly, further analysis of whether Plaintiff meets either the paragraph B or C criteria for disability under Listing 12.04, and if so, then such further proceedings should also include consideration of SSR 13-2p.

---

[10] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 6) is GRANTED; Defendant's

Motion (Dkt. 8) is DENIED.  The matter is REMANDED to the Commissioner for further

proceedings consistent with this Decision and Order.  The Clerk of Court is directed to

close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        September 23, 2025
                   Buffalo, New York

27